## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**EUSEBIO CASTILLO et al.,**

    **Plaintiffs,**

**vs.**                                                    **Case No.: 8:13-cv-01585-T-27TGW**

**GROUNDLEVEL, INC.,**

    **Defendant.**

_____/

### ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss and/or Motion for a More Definite Statement (Dkt. 7), to which Plaintiffs have responded in opposition (Dkt. 8). Upon consideration, the motion (Dkt. 7) is **GRANTED** *in part* and **DENIED** *in part*.

**I.   INTRODUCTION**

This case concerns Groundlevel's alleged violations of the Fair Labor Standards Act and the Migrant and Seasonal Agricultural Worker Protection Act. Plaintiffs were employed full-time by Groundlevel to perform "restoration activities, including reforestation, wetland restoration and land management activities in central Florida" (Dkt. 1 ¶ 10). They were paid on a "piece-rate" based on the number of trees or plants they planted during working hours. The piece rates allegedly failed to equal the minimum wage and Groundlevel allegedly failed to pay time-and-a-half to Plaintiffs when they exceeded 40 hours worked in a week. Groundlevel also allegedly failed to compensate Plaintiffs for "off the clock" work such as loading and unloading plants.[1]

---

[1] Guadalupe Cantoran and Julian Cantoran worked as chemical sprayers, rather than planters, and were paid at a rate of $8.00 per hour. Plaintiffs allege that Guadalupe and Julian were not paid overtime wages.

1

In December 2012, Plaintiffs were recruited by Groundlevel to plant trees for one month near Pensacola, Florida. Plaintiffs allege that Groundlevel "knowingly provided Plaintiffs with false and misleading information" about the employment and failed to provide a written statement of the terms and conditions of the employment, as required by the AWPA (Dkt. 1 ¶¶ 13, 14). Contrary to the working arrangement under which Plaintiffs allege they were hired, Plaintiffs were allegedly paid only minimum wage, rather than on a piece-rate basis, for their work in Pensacola, and Groundlevel allegedly failed to pay overtime.

Groundlevel moves to dismiss the Complaint on several bases. Groundlevel argues that Plaintiffs are exempt from the FLSA as agricultural workers, and that Plaintiffs have failed to sufficiently plead a violation of the FLSA because the allegations, taken as true, do not permit the justifiable inference that Groundlevel violated the FLSA. Groundlevel also argues that Plaintiffs have failed to state a claim for a violation of the AWPA because the allegations do not establish that Plaintiffs are "migrant agricultural workers," as defined in the AWPA, 29 U.S.C. § 1802(8)(A).

## II.   STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The complaint must contain enough facts to make a claim for relief plausible on its face."

*Resnick*, 693 F.3d at 1324-25. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)).

Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## II.  DISCUSSION

### A.  Count I - Violation of the Fair Labor Standards Act

#### 1.  *Plaintiffs Adequately Allege a* **Prima Facie** *FLSA Violation.*

Groundlevel argues that the Complaint does not contain "a factual basis on which the Court can make a 'just and reasonable inference' as to the amount or extent of hours worked that is not consistent with Plaintiffs' pay." This argument misconstrues the applicable pleading standard and

the requirements of *Twombly* and *Iqbal*.

"To state a claim for failure to pay minimum (or overtime) wages under the FLSA, a plaintiff must demonstrate that (1) he is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay him minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 Fed. Appx. 940, 942 (11th Cir. 2012) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n.68 (11th Cir. 2008)). The Complaint alleges all three prongs. Nevertheless, Groundlevel contends that the allegations are "threadbare" and are "more consistent with compliance, than violations" because they do not allow an inference "as to the amount or extent of hours worked."

Although a "complaint must contain enough facts to make a claim for relief plausible on its face," *Resnick*, 693 F.3d at 1324-25, *Twombly* and *Iqbal* do not demand "detailed factual allegations." *Twombly*, 550 U.S. at 555. Allegations of fact allowing the "reasonable inference" that the defendant is liable for the misconduct alleged are sufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Here, that reasonable inference is easily drawn from the Complaint. A claim under the FLSA is not a complicated cause of action, and requiring detailed allegations of the time worked would contravene principles of notice pleading and work against Rule 8(a)'s directive that complaints contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see U.S. Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008) ("Unlike the complex antitrust scheme at issue in *Twombly* that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward."); *Burton v. Hillsborough Cnty., Fla.*, 181 Fed. Appx. 829, 840 (11th Cir. 2006) ("Neither the FLSA nor the relevant case law contemplate, let alone require, such a heightened

4

pleading standard for overtime wage claims.").

> **2.      *The Complaint Is Not Due to Be Dismissed under the Agricultural Employee Exemption.***

Groundlevel contends that the FLSA claim must be dismissed because the Complaint establishes that Plaintiffs are agricultural workers exempt from the overtime provisions of the FLSA.[2] Plaintiffs respond that the claim survives because Groundlevel has not shown "plainly and unmistakably" that the exemption applies.

Section 213(b)(12) exempts from the overtime provisions of § 207 "any employee employed in agriculture." Under the FLSA,

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practice (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). The Secretary of Labor clarified that the § 203(f) definition of "agriculture" contains two distinct meanings. 29 C.F.R. § 780.105(a).[3] The primary meaning of "agriculture" includes "farming in all its branches." *Id.* § 780.105(b). The secondary meaning includes "any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations." *Id.* § 780.105(c). Finally, "employees not employed in farming or by a farmer or on a farm are not

---

[2]Groundlevel does not argue that the agricultural employee exemption found at § 213(b)(12) applies to Plaintiffs' minimum wage claims.

[3]Appropriate deference must be accorded to the Secretary of Labor's interpretations of the statutes he is charged with enforcing. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 844-45 (1984).

employed in agriculture." *Id.* § 780.105(d).

Without addressing the clarifying definitions propounded by the Secretary of Labor, Groundlevel argues that Plaintiffs' work in "restoration and reforestation," including planting trees, establishes that Plaintiffs were employed in agriculture. The Complaint does not, however, contain any allegations that Plaintiffs worked in farming or for a farmer. Rather, drawing all inferences in favor of Plaintiffs, the Complaint alleges that Plaintiffs were hired to reforest and restore non-farming land by planting trees. This activity is not "agriculture," as defined by the FLSA and the Secretary of Labor, and the overtime claim will not be dismissed on the basis of the agriculture exemption. *Accord* 29 C.F.R. § 780.115 ("Trees grown in forests . . . are not 'agricultural or horticultural commodities.' . . . It follows that employment in the production, cultivation, growing, and harvesting of such trees . . . is not sufficient to bring an employee within [§ 203(f)] unless the operation is performed . . . as an incident to or in conjunction with . . . farming operations."). *See generally Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 260 (1955) (briefly examining the evolution and scope of the agricultural exemption).

### 3.   *Plaintiffs Fail to Allege that Groundlevel Is Engaged in Interstate Commerce.*

Although the FLSA claim survives both of Groundlevel's arguments, it fails in a more fundamental manner arising upon a *sua sponte* review of the allegations. Sections 206 and 207 of the FLSA apply only to employees "engaged in commerce," engaged "in the production of goods for commerce," or employed "in an enterprise engaged in commerce or in the production of goods for commerce."[4] 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1); *see Freeman*, 494 Fed. Appx. at 942.

---

[4] An "[e]nterprise engaged in commerce or in the production of goods for commerce" is an enterprise that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and

"Commerce" is defined in § 203 as "trade, commerce, transportation, or communication *among the several States* or between any State and any place outside thereof." § 203(b) (emphasis added). Accordingly, for employees to invoke the FLSA, their work, or that of the enterprise for which they work, must touch interstate commerce in some way. *See Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) ("[F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce . . . .").[5]

In the Complaint, Plaintiffs fail to allege any facts allowing a reasonable inference that Groundlevel is involved in interstate commerce or the work Plaintiffs performed for Groundlevel touched on interstate commerce. Paragraph 9 alleges that Groundlevel is "an enterprise . . . engaged in commerce, within the meaning of the Fair Labor Standards Act," but such legal conclusions are disregarded for the purpose of determining whether a cause of action is adequately pleaded. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Absent other factual allegations supporting the legal conclusion that Groundlevel is an "enterprise" engaged in "commerce" within the meaning of the FLSA, Count I must be dismissed. *Cf. Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d

---

"whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

[5]The question of whether Groundlevel is an enterprise engaged in "commerce" is jurisdictional. *See Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1180 (11th Cir. 1983) (specifying the issue on appeal as "whether Johnston meets the FLSA's jurisdictional requirements because he was either 'engaged in production of goods or commerce' or 'engaged in commerce' while employed by Spacefone."). *But cf. Turcios v. Delicias Hispanas Corp.*, 275 Fed. Appx. 879, 882 (11th Cir. 2008) (refusing to address whether enterprise coverage is a "jurisdictional prerequisite," and holding that the question of enterprise coverage is "intertwined with the merits of an FLSA claim"); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007) (holding that the annual dollar value element of enterprise coverage is not jurisdictional); *Navegar, Inc. v. U.S.*, 192 F.3d 1050, 1064 (D.C. Cir. 1999) ("[C]ongressional findings in the original FLSA that sub-part labor conditions in manufacture carried on in one state could cause interstate commerce to be used to spread poor labor conditions . . ., burden the flow of commerce, and constitute an unfair method of competition in interstate commerce served to adequately explain the connection between the labor conditions of the newly-protected employees and interstate commerce.").

1292, 1317 (11th Cir. 2011) (granting summary judgment on FLSA claim where evidence demonstrated, among other things, that none of defendant's employees utilized goods or materials that had previously moved in interstate commerce); *Navarro v. Broeny Automotive Repairs, Inc.*, 314 Fed. Appx. 179, 180 (11th Cir. 2008) (affirming summary judgment on FLSA claim in favor of defendant where plaintiff collected automobile parts that were previously in the stream of interstate commerce and used them to repair foreign and domestic vehicles. These responsibilities "merely affected and did not implicate interstate commerce." (internal quotations omitted)); *Sandoval v. Fla. Paradise Lawn Maintenance, Inc.*, No. 07-22298-CIV, 2008 WL 1777392 (S.D. Fla. Apr. 17, 2008) (granting summary judgment on FLSA claim because plaintiff failed to meet the interstate commerce requirement where the defendant lawn company did not conduct business outside Florida, rely on trade or commerce from outside Florida, or purchase products, plants, or trees from outside Florida).

### B. Count II - Violation of the Migrant and Seasonal Agricultural Workers Protection Act

The AWPA is designed to "remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers." 29 U.S.C. § 1801. It is a "remedial statute and should be construed broadly to effect its humanitarian purpose." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1505 (11th Cir. 1993) (citing *Bracamontes v. Weyerhaeuser Co.*, 840 F.2d 271, 276 (5th Cir. 1988)).

Groundlevel argues that Count II must be dismissed because Plaintiffs have not alleged they are "migrant agricultural workers" within the meaning of the AWPA.[6] To qualify as a "migrant agricultural worker," one "must be 'employed in agricultural employment of a seasonal or other

---

[6]The Complaint does not allege, nor do Plaintiffs argue, that they fall within the definition of seasonal agricultural workers.

temporary nature,' and must be 'required to be absent overnight from his [or her] permanent place of residence.'" *Caro-Galvan*, 993 F.2d at 1504 (quoting 29 U.S.C. § 1802(8)(A)).

There is no dispute that Plaintiffs were required to be absent overnight from their places of residence. Rather, Groundlevel contests the first requirement, arguing that Plaintiffs do not allege facts establishing their employment was "of a seasonal or other temporary nature."[7] Labor is performed on a seasonal basis "where, ordinarily, the employment pertains to or is of the kind exclusively performed at certain seasons or periods of the year and which, from its nature, may not be continuous or carried on throughout the year." 29 C.F.R. § 500.20(s)(1). Ultimately, the "touchstone for seasonality is whether the employee is involved in field work." *Caro-Galvan*, 993 F.2d at 1508. "Field work" includes "*planting*, cultivating or harvesting operations." 29 C.F.R. § 500.20(r)(2)(ii) (emphasis added).

The dispositive question, therefore, is whether Plaintiffs' alleged employment in "reforestation" while in Pensacola, Florida constitutes "field work" withing the meaning of § 500.20(r)(2)(ii). Drawing all inferences in favor of Plaintiffs, it unquestionably does. Reforestation involves the planting of seeds and young trees, and "planting" falls squarely within the definition of field work.[8]

The fact that Plaintiffs work full-time for Groundlevel at another location on another task does not obviate the reasonable inference that Plaintiffs are seasonal workers. The AWPA was intended to cover "some persons working year-round for the same agricultural employer" and "year-round employment may qualify as seasonal within the meaning of the AWPA." *Caro-Galvan*, 993

---

[7] Groundlevel does not argue that Plaintiffs are not "employed in agricultural employment."

[8] Merriam-Webster defines "reforestation" as "the action of renewing forest cover (as by natural seeding or by the artificial *planting* of seeds or young trees." Reforestation, http://www.merriam-webster.com/dictionary/reforestation (last visited Aug. 17, 2013) (emphasis added).

9

F.2d at 1507, 1508; *see* 29 C.F.R. § 500.20(s)(1) ("A worker who moves from one seasonal activity to another, while employed in agriculture or performing agricultural labor, is employed on a seasonal basis even though he may continue to be employed during a major portion of the year."). This conclusion is consistent with the remedial nature of the AWPA and Congressional intent that the AWPA be construed broadly. *See Caro-Galvan*, 993 F.2d at 1505.

Accordingly,

1) Defendant's Motion to Dismiss and/or Motion for a More Definite Statement (Dkt. 7) is **GRANTED** *in part* and **DENIED** *in part*.

2) Count I is **DISMISSED** *without prejudice.*

3) Plaintiffs are **GRANTED** leave to file an amended complaint within fourteen days of the date of this Order.

**DONE AND ORDERED** this ___1st___ day of October, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

10